Rose Group Park Ave. LLC v Third Church Christ, Scientist, of N.Y. City

2026 NY Slip Op 02737

April 30, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

Rose Group Park Avenue LLC, Plaintiff-Respondent,

v

Third Church Christ, Scientist, of New York City, Defendant-Appellant.

Decided and Entered: April 30, 2026

Index No. 651390/19|Appeal No. 6503|Case No. 2024-00961|

Before: Kennedy, J.P., Gesmer, González, Rosado, Chan, JJ.

Landy Wolf PLLC, New York (David A. Wolf of counsel), for appellant.

Seyfarth Shaw LLP, New York (Eddy Salced of counsel), for respondent.

[*1]

Judgment, Supreme Court, New York County (Jennifer G. Schecter, J.), entered January 26, 2024, to the extent appealed from as limited by the briefs, awarding damages and declaratory and injunctive relief to plaintiff, and bringing up for review an order, same court and Justice, entered October 26, 2023, which, after a nonjury trial, granted in part plaintiff's claims and denied in part defendant's counterclaims, unanimously affirmed, with costs.

The trial court properly determined that sections 3.5(E) and (G) of the lease precluded defendant landlord from performing an audit of plaintiff tenant's gross sales seeking amounts beyond the previous lease year in order to determine the "additional rent" due. As we explained in a prior appeal in this matter, "defendant's right to audit plaintiff's gross sales was limited to no more than once per year (section 3.5 [G] [i]) and plaintiff was required to maintain supporting documents for at least one year (section 3.5 [E])" (Rose Group Park Ave. LLC v Third Church Christ, Scientist, of N.Y. City, 198 AD3d 506, 507 [1st Dept 2021]). These provisions support the trial court's conclusion that, after the one-year period, the landlord no longer has a right under the lease to challenge the tenant's calculation of gross sales or the sufficiency of the documents provided for that year.

For the same reasons, defendant's challenge to the amounts purportedly owed by plaintiff by underreporting amounts paid to plaintiff's affiliate was properly limited to section 3.5's one-year audit period. Thus, the court correctly found that certain relevant third-party payroll records should be included in the audit documents going forward, but that defendant was foreclosed from requiring plaintiff to produce those records for audits associated with earlier years based on the express limits in the lease. Because section 3.5(D)(ii) defines gross sales to exclude service charges paid directly to plaintiff's "employees," service charges paid directly to plaintiff's affiliate's employees fall within that definition as well.

The court properly directed defendant to return plaintiff's protest payment of the amounts demanded by defendant for purported underpayments of gross sales, less those amounts that the court calculated were due from plaintiff's affiliate. According to plaintiff's principal's unrebutted testimony, defendant never sought documents from plaintiff before 2019 using the procedure set forth in the lease. Accordingly, plaintiff's purported failure to produce documents did not entitle defendant to any remedy and warranted the court's denial of damages for conduct outside section 3.5's one-year audit period.

[*2]

The court also properly found that plaintiff was entitled to redact information from its tax returns unrelated to gross sales before producing the returns to defendant. Under section 3.5(G)(i), defendant is permitted to review the documents in section 3.5(E), which permits gross sales information to be "segregated from other business matters" together with "all books and records pertaining thereto." While broad, these sections demonstrate that defendant is not entitled to records or information contained within documents beyond those specifically relevant to gross sales.

Turning to the trial court's directive to follow the arbitration procedures set forth in section 37.1 relating to sharing the cost of the faÇade repairs, the court did not do so sua sponte. Rather, plaintiff specifically sought relief under that section, as was its right to do under the lease.

We also find no basis to disturb the declaratory and injunctive relief awarded. The record supports the court's finding that there was an agreement between the parties, renewable annually at the landlord's discretion, allowing the tenant to use the premises on 17 Wednesdays per year, at times usually reserved for defendant's use. The court therefore properly determined that plaintiff's future use of the premises on Wednesdays requires defendant's consent. We decline to reach defendant's argument raised for the first time on appeal that it is entitled to damages for plaintiff's prior use (see Diarrassouba v Consolidated Edison Co. of N.Y. Inc., 123 AD3d 525, 525 [1st Dept 2014]).

The court properly rejected defendant's contention that it was entitled to terminate the lease on that basis without service of a notice to cure (see Village Ctr. for Care v Sligo Realty & Serv. Corp., 95 AD3d 219, 222 [1st Dept 2012]). The lack of evidence in the record of any damages incurred by defendant is an indication that plaintiff's use did not constitute an incurable defect (see e.g. Empire State Bldg. Assoc. v Trump Empire State Partners, 245 AD2d 225, 229 [1st Dept 1997]).

The trial court properly determined that defendant's contention that plaintiff's use of the premises is subordinate to defendant's for all purposes runs contrary to the express language of sections 9.1 and 35.1 of the lease and this Court's findings in its 2012 order from the appeal of the denial of plaintiff's liquor license (see Rose Group Park Ave. LLC v New York State Liq. Auth., 93 AD3d 1, 12 [1st Dept 2012], lv denied 18 NY3d 953 [2012]). Although section 9.1 permits defendant to use specific areas of the basement for Sunday school and a nursery, it does not permit defendant to operate those areas as a reading room that is open to the public seven days a week. Defendant's contention that plaintiff is not harmed by the operation of a reading room is irrelevant to plaintiff's claim for the declaratory relief sought here to resolve the ongoing justiciable controversy between the parties (CPLR 3001).

[*3]

We see no basis to disturb the trial court's declaration that plaintiff acquired the right "to occupy the Literature Distribution/Committee Room, Treasurer's Office, and 4th Floor storage space on a non-exclusive basis" based on its improvements to those areas and defendant's acquiescence in that arrangement (see e.g. Simon & Son Upholstery, Inc. v 601 W. Assoc., 268 AD2d 359, 360 [1st Dept 2000]).

Defendant's contention that it must be permitted to use plaintiff's affiliate's lighting and audio-visual (AV) equipment is meritless, as those systems did not exist when the parties drafted section 35.2 requiring plaintiff to turn on the lights before church services. Therefore, section 35.2 could not have contemplated defendant's use of the new AV equipment when the lease was drafted (see Duane Reade, Inc. v Cardtronics, LP, 54 AD3d 137, 140 [1st Dept 2008]).

Defendant's complaints relating to plaintiff's performance of minor, nonstructural alterations and repairs were properly rejected by the trial court. A tenant "is at liberty to erect structures for the purpose of carrying on [its] legitimate business . . . even where, as here, the lease has a provision that alterations may not be made without the landlord's consent" (see Harar Realty Corp. v Michlin & Hill, 86 AD2d 182, 186 [1st Dept 1982] [internal quotation marks and citations omitted], lv dismissed 57 NY2d 836 [1982]). Additionally, defendant's challenge to the injunction precluding it from erecting signs on or near the premises absent plaintiff's permission fails, because, during its events, plaintiff has a right under section 27.1 to limit the display of signs reflecting that the premises is a church. That right would be undermined by defendant's placement of signs without plaintiff's consent.

We also decline to disturb the judgment's directives under section 35.2 that the auditorium remain set up for church services when not in use by plaintiff. The "specifications" by which plaintiff must abide are expressed in that section. Defendant does not proffer a basis upon which plaintiff is required to do anything further except that which is set forth in the court's order.

We have considered defendant's remaining contentions and find them unavailing.

THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: April 30, 2026